IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | |
|---|---|
| KEVIN SCHAWITSCH, | ) |
| Plaintiff, | ) |
| v. | ) No. 11-cv-3117 |
| CHAD DOWNS and BRENT FISCHER, | ) |
| Defendant. | ) |

**OPINION**

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This matter comes before the Court on Defendants Chad Downs and Brent Fischer's Motion for Summary Judgment Under Federal Rule of Civil Procedure 56 (d/e 31) (Motion). The parties consented, pursuant to 28 U.S.C. § 636(c), to have this matter proceed before this Court. <u>Consent to Proceed Before a United States Magistrate Judge, and Order of Reference entered October 11, 2011 (d/e 19)</u>. For the reasons set forth below, the Motion is allowed.

STATEMENT OF FACTS

Plaintiff Kevin Schawitsch was incarcerated in the Adams County, Illinois Jail (Jail) on October 19, 2009. At that time Plaintiff suffered from a number of health conditions including coronary artery disease, chronic obstructive pulmonary disorder (COPD), high blood pressure, esophageal

reflux, anxiety, insomnia, chronic pain, and a seizure disorder.  See Motion, Exhibit 2, Deposition of Lionel Smith, at 14-17, 20-21, 24, 27.  He had undergone heart bypass surgery in 2000.  Motion, Exhibit 3, Deposition of Steven Krause, at 8.  He also had a stroke in 2005.  Smith Deposition, at 22; Krause Deposition, at 7.

Schawitsch took a number of prescription medications for these problems, including narcotic pain killers and an anti-seizure drug called Keppra.  Smith Deposition, at 15-17, 21.  On October 20, 2009, Schawitsch met with Sherry Ann Richmiller, a Licensed Practical Nurser employed by the Jail.  Schawitsch had a bag with him that was full of his medications.  He told her that he had to take these medications as prescribed.  She called the doctors to confirm the prescriptions.  She also spoke to Defendant Chad Downs as the Jail Administrator because Jail policy normally did not allow inmates to take narcotic medicines.  Downs authorized the narcotic medication.  Defendants' Reply to Plaintiff's Response to Motion for Summary Judgment (d/e 34) (Reply), Exhibit 1, Deposition of Sherry Ann Richmiller, at 9-12, 14, 17-18.

Richmiller prepared all of Schawitsch's medications for dispensing, along with medications for other prisoners.  Richmiller prepared medicines a week at a time.  She put each medication for each inmate in a small coin envelope.  Each envelope had the name of the inmate and time for

dispensing the medication to the inmate. She then put the small coin envelopes into a larger envelope for each inmate for each day. Richmiller Deposition, at 15, 41-45. The Jail correctional officers picked up the medications in the envelopes daily and dispensed the medicines to the inmates. Richmiller testified that the correctional officers were trained to observe the inmates take the medications. Richmiller Deposition, at 15-17. Richmiller testified that Schawitsch started receiving his medicines in the Jail on October 20, 2009. Richmiller Deposition, at 14, 41.

On October 26, 2009, Richmiller was called to Schawitsch's cell because he was not feeling well. When she arrived, he appeared pale and sweaty. He was weak and could not walk. He had very low blood pressure, and a slightly elevated pulse. Schawitsch also could not move the left side of his face. Richmiller believed that Schawitsch was having a stroke and told the officers to send Schawitsch to the hospital emergency room. Richmiller Deposition, at 22-28, 46-47. Schawitsch was taken by an ambulance to the emergency room at Blessing Hospital in Quincy, Illinois. Richmiller Deposition, at 29-31.

The Blessing Hospital physician, Dr. Hrishikesh Ghanekar, testified in his deposition that Schawitsch was brought to the Blessing Hospital emergency room on October 26, 2009. Motion, Exhibit 3, Deposition of Hrishikesh Ghanekar, at 9. The emergency room records listed

Schawitsch's condition as a TIA/seizure disorder. A TIA is a transient ischemic attack, or a small stroke. Ghanekar Deposition, at 22. Schawitsch received an antidote for narcotics overdose while in the emergency room. He seemed to respond to the antidote. He also had a seizure while in the emergency room and was given an anti-seizure medicine, Ativan. Ghanekar Deposition, at 23-24, 27. He was then transported to the intensive care unit (ICU). Ghanekar Deposition, at 24. Dr. Ghanekar treated Schawitsch in that ICU. Ghanekar Deposition, at 30.

One of the emergency doctors, Dr. Pyatt, tested Schawitsch for Dilantin. Dilantin was an anti-seizure medication that was not prescribed for Schawitsch. Doctor Pyatt ran the test because a nurse or family member reported that Schawitsch might have taken Dilantin in the Jail. The test was negative for Dilantin. The emergency room doctors did not test for Keppra, the anti-seizure medicine that was prescribed for Schawitsch. Ghanekar Deposition, at 26-27, 29, 45. Schawitsch ultimately recovered and was released from Blessing Hospital on November 3, 2009. Ghanekar Deposition, at 21. He was then released from the Jail's custody. See Richmiller Deposition, at 34.

Several months later, on April 16, 2010, Schawitsch went to see Dr. Smith for an office visit. Schawitsch's condition was worsening. According to Dr. Smith's notes, Schawitsch stated that the officials in the

Jail refused to give him his "meds" while he was incarcerated in October 2009.  Smith Deposition, at 34.  Dr. Smith stated that he received all of his information about Schawitsch's treatment in the Jail from Schawitsch.  Dr. Smith did not review any medical records or other documentation.  Id.

Schawitsch filed this action on May 3, 2011.  He named Jail Administrator Downs and Adams County, Illinois, Sheriff Brent Fischer as Defendants.  He alleged that the Defendants were told about his medical conditions, but were deliberately indifferent to his medical condition and did not give him his medications while he was incarcerated at the Jail.  He alleged that he had a seizure at the Jail on October 26, 2009, due to the defendants' deliberate indifference.  He alleges a violation of his Eighth Amendment right against cruel and unusual punishment.  Complaint (d/e 1), ¶¶ 5-18.

In discovery, Schawitsch provided his Rule 26(a)(2) expert disclosure.  Motion, Exhibit 1, Disclosure Pursuant to Rule 26(a)(2)(A).  The Rule 26(a)(2) Disclosure stated that Schawitsch's primary physician Dr. Smith, the ICU physician Dr. Ghanekar, and his cardiologist Dr. Steven Krause, would provide expert opinion evidence about the Defendants' actions at the Jail.  Id.  Each doctor was deposed.  Each doctor testified that he could not provide any of the expert opinions disclosed by Schawitsch in his Rule 26(a)(2) Disclosure.  Smith Deposition, at 46-53;

Krause Deposition, at 27-29; Ghanekar Deposition, at 41-43.  Dr. Smith testified that he had no knowledge of the events at the Jail other than the information that Schawitsch reported to them.  Smith Deposition, at 53.  Dr. Krause testified that Schawitsch did not tell him anything about his treatment at the Jail.  Krause Deposition, at 17-25.

Dr. Ghanekar testified at his deposition that Schawitsch's family members expressed concern when Schawitsch was brought to Blessing Hospital on October 26, 2009, that Schawitsch had not received his anti-seizure medicine while in the Jail.  Ghanekar Deposition, at 43.  Dr. Ghanekar did not attempt to determine whether Schawitsch had received his anti-seizure medicine.  Dr. Ghanekar agreed in his deposition that a person on anti-seizure medicine is more at risk to have a seizure if he does not receive his medicine.  Dr. Ghanekar also agreed that one of the possible causes for a seizure is a failure to take prescribed anti-seizure medicine.  Dr. Ghanekar also agreed that Schawitsch's seizures were not controlled when he came to the emergency room on October 26, 2009, because Schawitsch had a seizure in the ER.  Ghanekar Deposition, at 47.  Dr. Ghanekar, however, also agreed that people who take anti-seizure medicine may still have seizures.  Ghanekar Deposition, at 50.

ANALYSIS

Defendants now move for summary judgment. At summary judgment, the Defendants must present evidence that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The Court must consider the evidence presented in the light most favorable to Schawitsch. Any doubt as to the existence of a genuine issue for trial must be resolved against the Defendants. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Once the Defendants have met their burden, Schawitsch must present evidence to show that issues of fact remain with respect to an issue essential to his case, and on which he will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. at 322; Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In this case, Schawitsch failed to present evidence to show that an issue of fact exists.

Schawitsch alleges that the Defendants failed to provide adequate medical care to him while he was incarcerated at the Jail. It is unclear whether Schawitsch was a pretrial detainee or whether he was serving a sentence after conviction. The treatment of convicted prisoners in custody is governed by the Eighth Amendment prohibition against cruel and unusual punishment. The treatment of a pretrial detainee is governed by the Fourteenth Amendment right to due process. Board v. Farnham, 394

F.3d 469, 477 (7th Cir. 2005). The constitutional standard in this case, however, is the same for both convicted prisoners and pretrial detainees. Id. at 478. Schawitsch must present evidence that the harm to him was objectively serious and the defendants were deliberately indifferent to his health or safety. Id. Schawitsch must also present verifying medical evidence showing the detrimental effect of the delay or denial of care. Williams v. Liefer, 491 F.3d 710, 714 (7th Cir. 2007); Langston v. Peters, 100 F.3d 1235, 1237 (7th Cir. 1996).

Schawitsch fails to present any competent evidence that the Defendants were deliberately indifferent to his health or that their actions had a detrimental effect on his care. The deposition testimony of Richmiller indicates that correctional officers dispensed all of Schawitsch's medications to him on a daily basis beginning on October 20, 2009, the day after he arrived at the Jail. On October 26, 2009, Richmiller was called to Schawitsch's cell when he became ill. She determined that he was having a possible stroke and had him sent to the emergency room by ambulance. Schawitsch was treated at Blessing Hospital and released on November 3, 2009. None of this evidence indicates any failure by Jail personnel to provide appropriate care for Schawitsch's health condition.

The evidence shows that Defendants Downs and Fischer had almost no involvement with Schawitsch's medical treatment or in the dispensing of

his medications. Richmiller gave Schawitsch the narcotic pain killers after Downs authorized her to do so. No evidence indicates that Downs had any involvement with dispensing Schawitsch's other medications, and particularly nothing to do with dispensing his anti-seizure medicines. No evidence indicates that Fischer had any involvement with dispensing Schawitsch's medications.

Schawitsch relies on the fact that Dr. Smith testified from his records of an April 2010 office visit that Schawitsch told Dr. Smith that he was denied his medications while in the Jail. Smith Deposition, at 34. Dr. Ghanekar also testified that Schawitsch's family expressed concerns that Schawitsch was not receiving his anti-seizure medicines while in the Jail. Ghanekar Deposition, at 43. These two statements are hearsay and are not competent evidence to oppose a motion for summary judgment. See Fed. R. Civ. P. 56(c).

Schawitsch relies on the evidence that he did not have any Dilantin in his system when he arrived at the emergency room on October 26, 2009. Schawitsch was on Keppra, not Dilantin. The Blessing Hospital doctors tested for Dilantin because he was not supposed to take that medication. The absence of Dilantin from his body proves nothing. The Blessing Hospital doctors never tested to determined whether he had taken his prescribed anti-seizure medicine, Keppra. Ghanekar Deposition, at 26-27,

29, 45.  Schawitsch fails to present any competent evidence that he was denied his anti-seizure medicine while incarcerated at the Jail.  He therefore fails to meet his burden to show that issues of fact exist on his claim that the Defendants were deliberately indifferent to his medical condition.  See Catrett, 324 (at summary judgment a non-moving party cannot rely on allegations in pleadings, but must present competent evidence to show that an issue of fact exists).

Schawitsch also fails to present verifying medical evidence that the care he received at the Jail caused his illness on October 26, 2009.  Dr. Ghanekar agreed that a person who is prescribed anti-seizure medicine is at greater risk of having a seizure if he does not take the medicine and Schawitsch's seizures were not controlled when he arrived at the emergency room on October 26, because he had a seizure at that time.  Ghanekar Deposition, at 47.  Dr. Ghanekar, however, also agreed that a person taking anti-seizure medicine could still have seizures.  Ghanekar Deposition, at 50.  Dr. Ghanekar's observations, therefore, say nothing about whether Schawitsch received his anti-seizure medicine at the Jail, or whether his treatment at the Jail caused his seizure on October 26.  Schawitsch failed to meet his burden to present evidence to show that an issue of fact exists in this case.  The Defendants are entitled to summary judgment.

WHEREFORE Defendants' Motion for Summary Judgment Under Federal Rule of Civil Procedure 56 (d/e 31) is ALLOWED.  Summary judgment is entered in favor of Defendants Chad Downs and Brent Fischer and against Plaintiff Kevin Schawitsch.  All pending motions are denied as moot.  THIS CASE IS CLOSED.

ENTER:    October 3, 2012

                              *s/ Byron G. Cudmore*
                              BYRON G. CUDMORE
                              UNITED STATES MAGISTRATE JUDGE